UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

OWEN JOHNSON, SR.,

        Petitioner,

    - against -

UNITED STATES OF AMERICA

        Respondent.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 12 15

**OPINION AND ORDER**

15 Civ. 1494 (SAS)
10 Cr. 973 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Owen Johnson, Sr., proceeding *pro se*, petitions this Court to correct, vacate, or set aside his conviction pursuant to section 2255 of Title 28 of the United States Code ("section 2255").[1] Johnson challenges his sentence on the ground that he was denied effective assistance of counsel during his trial, sentencing, and appeal.[2] Johnson additionally alleges violation of due process based on the government's subornation of perjury,[3] and claims that the government

---

[1]    *See* Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence ("Pet. Decl.").

[2]    *See id.*

[3]    *See id.*

-1-

withheld exculpatory information from the defense.[4]

## II.    BACKGROUND

On August 9, 2011, a jury convicted Johnson and two co-conspirators for their role in a mortgage fraud conspiracy which took place between 2007 and 2010.  Johnson was also convicted of fraudulently obtaining a mortgage loan in April 2007 for a property located in the Bronx.[5]  Through the fraudulent scheme, Johnson and his co-conspirators recruited individuals to act as straw purchasers of previously identified residential property, later using the nominee purchasers' credit scores and false information to create fraudulent applications for mortgage loans.[6]  By skimming proceeds from the mortgage loans and collecting rent payments from tenants as well as Section 8 rent subsidies from the city for certain properties, Johnson was able to profit substantially from the fraud.[7]

This Court held a sentencing hearing on August 2, 2012.  After

---

[4]    *See* Motion Requesting an Evidentiary Hearing on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. Section 2255 ("Pet. Supp. Br.").

[5]    *See* Government's Opposition to Petitioner Owen Johnson, Sr.'s Motion Pursuant to 28 U.S.C. § 2255 to Correct, Vacate, or Set Aside His Conviction ("Opp. Mem.") at 3.

[6]    *See id.* at 4-7.

[7]    *See id.* at 7-8

reviewing the Probation Department's Revised Pre-Sentence Report (the "PSR") which set Johnson's total offense level at 31 and recommended a sentence range between 108 and 135 months' imprisonment, the Court sentenced Johnson to 72 months in prison to be followed by three years of supervised release.[8]  The Court further imposed a two hundred dollar mandatory special assessment and forfeiture in the amount of $4,849,075.[9]

On August 14, 2012, Johnson filed a notice of appeal through court-appointed appellate counsel.[10]  In a subsequent, supplemental *pro se* brief, Johnson argued that (1) the district court abused its discretion by not addressing Johnson's pre-trial claims of ineffective assistance of counsel, and (2) the government committed a *Brady* violation by withholding exculpatory information pertaining to its investigation into Golden First Mortgage.[11]  On February 4, 2014, the Second Circuit affirmed the conviction and sentence, rejecting each of Johnson's claims with the exception of the ineffective assistance of counsel claim which it dismissed without prejudice.[12]

---

[8]    *See id.*

[9]    *See* 10/2/12 Sentencing Transcript, Ex. 3 to Opp. Mem., at 24.

[10]   *See* Opp. Mem. at 13.

[11]   *See id.*

[12]   *See United States v. Johnson*, 553 Fed. App'x 78 (2d Cir. 2014).

In the instant motion, Johnson expands his claims for ineffective assistance of counsel, arguing that his trial counsel, Gregory Cooper, sentencing counsel, Richard Lind, and appellate counsel, Daniel Perez, provided constitutionally deficient representation.[13]  In addition, Johnson revives his *Brady* claim[14] and argues that the government violated his right to due process by knowingly offering perjured witness testimony.[15]

## III.   APPLICABLE LAW

### A.   Section 2255

Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence.  Specifically, "[s]ection 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum

---

[13]     *See* Pet. Decl. at 6-7, 9-10; *see also* Pet. Supp. Br. at 2-7, 14-22, 27; and Petitioner's Reply to Government's Opposition to His Motion Pursuant to 28 U.S.C. § 2255 ("Reply Mem.") at 4-23, 33-49, 53-60.

[14]     *See* Pet. Supp. Br. at 22.

[15]     *See* Pet. Decl. at 9.

-4-

time authorized by law."[16]

A properly filed motion under section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[17]  Accordingly, relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice."[18]  Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, courts have established rules that "make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."[19]

"A petition for habeas corpus relief requires an evidentiary hearing to resolve disputed issues of fact unless the record shows that the petitioner is not

---

[16]     *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2005).

[17]     *See* 28 U.S.C. § 2255.

[18]     *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quotation marks and citations omitted).

[19]     *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks and citations omitted).

entitled to relief."[20]   However, a court may deny a section 2255 petition without

holding a hearing where: (1) the petition lacks "meritorious allegations" that can be

established by "competent evidence;"[21] (2) the case files and records conclusively

demonstrate that the petitioner is not entitled to relief;[22] or (3) the allegations of the

petition, even if accepted as true, would not entitle the petitioner to relief.[23]  "The

decision whether to hold an evidentiary hearing on a 2255 motion is generally left

to the discretion of the district court."[24]

      In order to warrant an evidentiary hearing, the habeas application

"must contain assertions of fact that a petitioner is in a position to establish by

competent evidence . . . . Airy generalities, conclusory assertions and hearsay

statements will not suffice."[25]  A court is not required to presume the credibility of

---

[20]     *Ortega v. United States*, 897 F. Supp. 771, 781 (S.D.N.Y. 1995)
(citing *Hayden v. United States*, 814 F.2d 888, 891 (2d Cir. 1987)). S*ee also* 28
U.S.C. § 2255(b).

[21]     *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).

[22]     *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990).

[23]     *See Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001)
(citing *Chang v. United States*, 250 F.3d 78, 85-86 (2d Cir. 2001)).

[24]     *Swerbilov v. United States*, No. 04 Civ. 3320, 2005 WL 1177938, at
*2 (E.D.N.Y. May 18, 2005) (citing *Newfield v. United States*, 565 F.2d 203, 207
(2d Cir. 1997)).

[25]     *Aiello*, 814 F.2d at 113.

factual assertions "where the assertions are contradicted by the record in the underlying proceeding."[26]  Moreover, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"[27]  Depending on the allegations in the petition, a "court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing."[28]  Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'"[29]

Because petitioner is appearing *pro se*, the Court construes the petition liberally and interprets it to raise the strongest arguments that it suggests.[30]

### B.    Procedural Default

It is well-settled that, with the exception of claims alleging ineffective

---

[26]    *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

[27]    *Id*. at 213 (quoting Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts).

[28]    *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977) (stating that courts "may employ a variety of measures in an effort to avoid the need for an evidentiary hearing")).

[29]    *Id*. (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970) (footnote omitted)).

[30]    *See Erickson v. Pardus*, 551 U.S. 89, 84 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

assistance of counsel,[31] federal prisoners may not employ section 2255 as a substitute for direct appeal,[32] nor can they use it as a vehicle to relitigate issues that have previously been raised and addressed on direct appeal.[33]  As the Supreme Court explained in *United States v. Frady*, "[o]nce the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."[34]

## C.     Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms"; and (2) that he suffered prejudice as a result of that representation.[35]  When considering the first factor, a court must apply a "strong presumption" that counsel's representation fell within

---

[31]     *See Massaro v. United States*, 538 U.S. 500, 509 (2003).

[32]     *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184-85 (1979).

[33]     *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)) ("[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.") (quotations omitted).

[34]     *Frady*, 456 U.S. at 164.

[35]     *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

the "wide range" of reasonable professional assistance.[36]  It is the petitioner's burden to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[37] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[38]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[39]

Even if an attorney's performance is objectively unreasonable, a petitioner must still prove prejudice.[40]  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[41]  "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

---

[36]     *Id*. at 689.  *Accord Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

[37]     *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687).

[38]     *Strickland*, 466 U.S. at 690.

[39]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

[40]     *See Strickland*, 466 U.S. at 687.

[41]     *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693).

reasonable probability is a probability sufficient to undermine confidence in the outcome."[42]  As explained by the Supreme Court, the order of analysis of the two *Strickland* prongs — performance and prejudice — is at the discretion of the court.[43]

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[44]

Thus, if the court finds that there is no prejudice, it need not reach the performance prong.[45]

"Although the *Strickland* test was formulated in the context of

---

[42]     *Strickland*, 466 U.S. at 694.

[43]     *Id*. at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they had actually had an adverse effect on the defense.").

[44]     *Id*. at 697.

[45]     *See Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

-10-

evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel."[46]  In advancing a claim of ineffective assistance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."[47]  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[48]

### D.    Habeas Relief Based on Perjured Witness Testimony

A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."[49]  However, "[a] showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief."[50]  "Instead, when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only 'if the

---

[46]    *Mayo*, 13 F.3d at 533.

[47]    *Id.*

[48]    *Id.*

[49]    *United States v. Dunnigan,* 507 U.S. 87, 94 (1993).

[50]    *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003).

testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'"[51] Where the government "knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[52]

## IV.    DISCUSSION

### A.    Ineffective Assistance of Counsel Claims Against Trial, Sentencing, and Appellate Counsel

#### 1.    Trial Counsel

Johnson argues that he received ineffective assistance of counsel because Cooper was not prepared for trial and failed to conduct or direct a professional to conduct an investigation during the pre-trial stage.[53]  He specifically contends that Cooper (1) failed to adequately review the government's voluminous

---

[51]    *Id.* (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)) (footnote and alterations omitted).

[52]    *Wallach*, 935 F.2d at 456 (internal quotation marks omitted).  *Accord Ortega*, 333 F.3d at 108 n. 4 ("Although *Wallach* involved a direct appeal from a federal district court conviction, rather than a collateral attack on a state conviction through habeas, we find its reasoning applicable here."); *Conteh v. United States*, 226 F. Supp. 2d 514, 519 (S.D.N.Y. 2002) (applying *Wallach* to a section 2255 petition).

[53]    *See* Pet. Decl. at 5; *see also* Pet. Supp. Br. at 2-5, 14-18, 20-22.

discovery submissions;[54] (2) improperly declined "to interview any of the individuals who [he] asked to be interviewed as potential witnesses in support of the defense that he is actually innocent of the offense";[55] (3) prevented Johnson from testifying at trial;[56] and (4) improperly relied on Johnson, rather than an investigator, to collect certain documents in preparation for trial but ultimately decided not to use them as evidence.[57]

   Johnson argues as a general basis for claiming ineffective assistance of trial counsel that, had a better case been made on his behalf, the evidence would have demonstrated a competing version of the events that was sufficiently credible and persuasive to rebut the government's case and compel the jury to find that Johnson was innocent.  He argues, for instance, that witness testimony would have communicated Johnson's "good faith effort to operate a legitimate real estate company intended on meeting its financial obligations while generating a profit."[58] Johnson identifies six witnesses who could have testified helpfully at trial, four of whom were purchasers who either continued living in the properties at issue or

---

[54] *See* Pet. Supp. Br. at 2-5.

[55] *Id.* at 15-18.

[56] *See id.* at 19-20.

[57] *See id.* at 4-5.

[58] *Id.* at 17.

sold them after making improvements.[59]  Johnson also argues that various documents and receipts would have further shown that he refurbished and otherwise invested in the properties obtained by his company.[60]

The record demonstrates, however, that Cooper reviewed the government's discovery documents and made significant efforts to investigate the case prior to trial.  At the July 12, 2011 hearing convened in response to Johnson's request for a new attorney, Cooper confirmed with the Court that he had reviewed the government's approximately twenty thousand pages of discovery documents and was prepared to discuss them with Johnson.[61]  The Court explained to Johnson that it had received multiple applications from Cooper prior to the hearing which showed investigations were proceeding, and that it was "satisfied that Cooper has been working on this case."[62]  Indeed, Cooper attested that "[o]n August 1, 2011 [he] was fully prepared for trial, having reviewed the voluminous pre-trial discovery as well as the provided 3500 material."[63]

---

[59]     See id. at 17-18.

[60]     See id.

[61]     See 7/11/11 Transcript at 3-4.

[62]     Id. at 8.

[63]     7/16/15 Declaration of Gregory Cooper ("Cooper Decl."), Ex. 1 to Opp. Mem., ¶ 13.

Further, Cooper was not ineffective because he continued to review trial documents and made efforts to contact witnesses during the weekend prior to trial.  As the Court explained at the July 29, 2011 hearing, it is not unusual for attorneys to receive 3500 material from the government at the last minute, and Cooper cannot be faulted for failing to contact witnesses whom he learned of on the eve of the trial — or for not contacting witnesses that he recognized but preferred not to call based on his professional judgment.[64]  Based on this record, I am satisfied that Cooper was sufficiently competent and prepared to represent Johnson at trial.

Johnson's claim that Cooper's decision to forgo the testimony of several potential witnesses, including the six individuals whom Johnson has identified, constituted ineffective assistance of counsel also lacks merit.  According to Johnson, four of the named witnesses would have provided helpful testimony by explaining that they purchased real estate with Johnson's assistance and either refurbished and resold the homes or are still living in the properties after having repaid their mortgage.[65]  Johnson additionally names Jillian Gbidi, who once worked with Johnson but later joined Golden First as a loan processor, and an

---

[64]    *See* 7/29/11 Hearing Transcript ("Tr."), Ex. 4 to Opp. Mem., at 17-18.

[65]    *See* Pet. Supp. Br. at 17-18.

attorney who participated in many of the property transactions at issue in the case.[66]  However, Johnson's claims with respect to these witnesses are based on his own summaries and are not substantiated by sworn statements or declarations from these witnesses.

Even if Johnson could prove with competent evidence that each individual would have testified to the facts set forth in his summaries, Cooper's decision not to call them as trial witnesses was neither deficient nor improper, let alone consistent with a colorable claim for ineffective assistance of counsel.  Two of the proposed witnesses had been initially charged as co-conspirators in the fraudulent mortgage scheme, and the proposed attorney witness has been suspended from practicing law for engaging in fraudulent practices.[67]  In addition, two of the individuals identified by Johnson were relatives.[68]  Assuming that these witnesses would have been willing to testify at Johnson's trial, counsel cannot be faulted for deciding that the risks associated with calling potential co-conspirators to a crime and a defendant's relatives — who would undoubtedly face cross-examination concerning their knowledge of the scheme and possible biases —

---

[66]     *See id.*

[67]     *See* Cooper Decl. ¶ 8.

[68]     *See id.*

outweighed any potential benefit that their testimony could have achieved.

Further, because the testimony Johnson describes is immaterial to his culpability in the fraudulent mortgage application scheme, its absence did not cause prejudice.  Johnson was charged with conspiracy to commit bank and wire fraud based on his central role in submitting falsified mortgage applications in order to profit from fraudulently obtained loans.[69]  At trial, the government provided evidence that Johnson trained two co-conspirators to identify potential straw purchasers, recruited straw purchasers himself, and played a key role in falsifying various components of the mortgage applications such as employment history and income.  This evidence was sufficient to convince the jury of Johnson's guilt beyond a reasonable doubt, and it is doubtful that the outcome would have been any different had the jury known that, in a few instances, purchasers were able to resell property which Johnson helped them purchase or remain in those homes while fulfilling their mortgage obligations.  These facts, had they been credibly established, likely would have had no bearing on the jury's determination that Johnson falsified mortgage applications during the period at issue or engaged in other fraudulent activity, as they are irrelevant to an evaluation of Johnson's criminal conduct.

---

[69]     *See* Opp. Mem. at 34-38.

Johnson's claim that he was deprived of effective assistance of counsel because Cooper advised him not to testify at trial is equally unavailing.[70] As with witnesses whose testimony may do more harm than good, a defendant who testifies exposes himself to all of the risks inherent in the adversarial process. Here, Johnson's conclusory assertion that his testimony would have provided the jury with exonerating evidence is insufficient to establish that Cooper's advice was constitutionally deficient.

Finally, Cooper's decision to ask Johnson to collect certain publicly available court papers for the purposes of impeaching government witnesses was not improper. As this Court explained at the July 29, 2011 conference, clients regularly assist their attorneys to prepare for trial when they are competent to do so.[71] Johnson was indeed competent to assist in this task, as evidenced by his successful retrieval of the court records. Moreover, this Court has no basis to find that Cooper's decision not to use those records at trial was deficient. A court is not permitted to second-guess counsels' post-investigation trial strategy.[72]

---

[70]     Johnson acknowledges that he was aware that "the decision to testify was his," and does not contend that Cooper prevented him from testifying. Rather, Johnson takes issue with Cooper's recommendation that he not testify because Cooper believed it would not be beneficial to Johnson. *See* Reply Mem. at 53-55.

[71]     *See* 7/29/11 Tr. at 20-21.

[72]     *See Strickland*, 466 U.S. at 690.

## 2.      Sentencing Counsel

Johnson argues that his attorney at sentencing was ineffective because he failed to object to the government's loss calculation found in the PSR for being erroneous, arbitrary, and not supported by evidence.[73]  The Court disagrees.  In order to determine the total loss borne by the victim banks, the government calculated the sum of the fraudulently obtained loans, $10,324,988, and discounted it by seventy percent to reach a total of $3,097,496.40.[74]  Johnson does not provide a specific factual or legal basis for challenging this calculation.

Moreover, the Court notes that Lind undertook a significant effort to challenge the government's loss calculation by engaging an experienced appraiser to evaluate some of the properties at issue in the case.[75]  However, because the results of the appraisals were unhelpful to Lind's goal of demonstrating a total loss amount that correlated to a lesser Offense Level adjustment, Lind consulted with Johnson and decided to contest the properties included in the loss calculation, rather than continue evaluating losses associated with individual property.[76]

## 3.      Appellate Counsel

---

[73]      *See* Pet. Decl. at 6.

[74]      *See* Opp. Mem. at 42.

[75]      *See* 8/6/15 Declaration of Richard Lind, Ex. 2 to Opp. Mem., ¶ 7.

[76]      *See id.* ¶¶ 8-10.

Johnson contends that he received ineffective assistance of counsel because Perez declined to raise Johnson's *Brady* claim — as well as claims for ineffective assistance of counsel and violation of due process — and improperly advised Johnson not to pursue the due process claim because there was a limit to the amount of appealable issues.[77]  Johnson also argues that Perez was deficient in handling the two issues raised by Johnson in his supplemental *pro se* brief during oral argument.[78]

Perez's appellate efforts were not ineffective.  In response to Johnson's request to raise claims of government misconduct — offering perjured trial testimony and committing *Brady* violations — Perez explained that he was procedurally barred from raising issues that were not preserved below.[79]  However, Perez did assist Johnson to obtain permission from the Second Circuit to file a supplemental *pro se* brief, an avenue which Johnson utilized to argue ineffective assistance of counsel and violations of his rights under *Brady*.[80]  In this regard, Perez's decision to decline to advance what he believed to be procedurally barred

---

[77]     *See* Pet. Decl. at 9-10; *see also* Pet. Supp. Br. at 28-29.

[78]     *See* Pet. Supp. Br. at 28-29.

[79]     *See* 8/6/15 Declaration of Daniel Perez ("Perez Decl."), Ex. 5 to Opp. Mem., ¶¶ 5-6.

[80]     *See id.*

claims but assist Johnson in raising them on his own accord was not deficient. Moreover, Perez was not obligated to raise every nonfrivolous argument that could be made.[81]  Therefore, his representation was not constitutionally deficient.

Johnson's argument that Perez prevented him from raising the due process claim on appeal is also without merit.  Perez attests that he did not advise Johnson to limit the issues he raised on appeal but explained that certain claims were barred for procedural reasons.[82]  Perez further states that Johnson did not identify which testimony he believed was perjurious.[83]  Nevertheless, Johnson was aware that he could have raised the perjured testimony claim in the supplemental brief along with his *Brady* and ineffective assistance of counsel claims.  Indeed, the purpose of the supplemental brief was to raise those arguments which Perez advised against raising in his direct appeal.  That Johnson chose not to raise the due process claim on direct appeal does not suggest ineffective assistance of counsel on Perez's part.

Finally, Johnson's contention that Perez's performance during oral argument was inadequate is belied by the record.  Indeed, Perez's oral argument

---

[81]    *Mayo*, 13 F.3d at 533.

[82]    *See* Perez Decl. ¶¶ 5-6.

[83]    *See id.* ¶ 5.

focused largely on the supplemental claim for ineffective assistance of counsel.[84]

### B.   Petitioners' *Brady* and Due Process Claims

#### 1.   Government's Withholding of *Brady* Materials

Johnson's *Brady* claim focuses on the government's withholding of information concerning its investigation into Golden First, JP Morgan Securities, JP Morgan Chase Bank, and EMC Mortgage for fraudulent mortgage practices and other activities.  Johnson argues that information related to the government's investigation into Golden First is especially relevant and material to his case. However, the Second Circuit previously reviewed this issue on direct appeal and rejected it on its merits.  Accordingly, Johnson's *Brady* claim is not properly before this Court, and is dismissed.

#### 2.   Perjured Witness Testimony

Johnson argues that the government violated his right to due process by suborning perjured testimony, thereby depriving Johnson of a fair trial.  He claims that "several of the witnesses that testified at trial about their role in the scheme [ ] testif[ied] falsely so as to bolster the case against petitioner."[85] Johnson's support for this claim is limited to a declaration from his son, Owen

---

[84]   *See id.* ¶ 7.

[85]   Pet. Decl. at 9.

Johnson, Jr., who attests that co-defendant Kevin Absalom visited his home in July 2011 and revealed that the government compelled him to lie about his involvement in one of the transactions.[86]

In order for a petitioner to be granted habeas relief on the basis of perjured testimony, the Court must first accept that the testimony offered at trial was false.  I am not persuaded — based solely on Johnson Jr.'s hearsay declaration — that Absalom lied about his knowledge of or involvement in the 4530 Hill Avenue real estate purchase.  Even assuming *arguendo* that Absalom lied to the government about his knowledge or involvement, there is no basis to conclude that the alleged truthful testimony — that Absalom "knew nothing about the property"[87] — would have resulted in Johnson's acquittal.  Accordingly, this claim lacks merit and must be dismissed.

### C.    A Hearing Is Not Required

After examining the record, briefs, declarations, and exhibits, I find that Johnson's ineffective assistance of counsel and due process claims are meritless and unsupported by competent evidence.  Because the remaining *Brady* claim is procedurally defaulted, it too must be dismissed.  Accordingly, no

---

[86]    *See* 9/22/14 Declaration of Owen Johnson, Jr., Attachment "A" to Reply Mem., ¶ 7.

[87]    *Id.*

evidentiary hearing is necessary.

## V.   CONCLUSION

For the foregoing reasons, Johnson's section 2255 petition is denied. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, this Court declines to issue a Certificate of Appealability.[88] The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.[89]  The Clerk of the Court is directed to close this motion [Dkt. No. 1] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November /2, 2015

---

[88]      *See* 28 U.S.C. § 2253.

[89]      *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

24

**-Appearances-**

**Petitioner (Pro Se):**

Owen Johnson, Sr.
Reg. No. 63499-054
Moshannon Valley Correctional Center
55 Geo Drive
Phillipsburg, PA 16866

**For Respondent:**

Rosemary Nidiry
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
212 637-1063